Sheila SHIELDS and husband Jim
Shields, Individuals, Plaintiffs,

v.

OUTBOARD MARINE CORPORATION,
Defendant.

Civ. No. 90–4–ALB/AMER(DF).

United States District Court,
M.D. Georgia,
Albany Division.

Oct. 30, 1991.

Ben B. Mills, Jr., Mills & Chasteen, Fitzgerald, Ga., R. Ben Hogan, III, Hogan, Smith, Alspaugh, Samples & Pratt, P.C., Birmingham, Ala., for plaintiffs.

Ben L. Weinberg, Jr., Suzanne M. Trexler, Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., Warren E. Platt, Snell & Winter, Albert J. Dahm, Phoenix, Ariz., for defendant.

FITZPATRICK, District Judge.

Pending before the court is defendant Outboard Marine Corporation's motion for summary judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment bears the initial burden of showing there are no genuine issues of material fact that should be decided at trial and that it is entitled to judgment as a matter of law. When this has been done, the burden shifts to the non-moving party to demonstrate that there is indeed a material issue of fact or law precluding summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). After considering the law and the facts, the court has decided to grant the motion.

## BACKGROUND

On July 3, 1989, plaintiff Sheila Shields was a passenger in a recreational motor boat in Wakulla County, Florida. The driver lost control of the boat after it struck a submerged object and the plaintiff fell overboard. She was hit and injured by the engine's propeller. The engine was manufactured by defendant Outboard Marine Corporation.

The sole basis of the plaintiffs' case is their claim that the defendant's motor was of defective design since it lacked a propeller guard, thus making it unreasonably dangerous and for which the defendant should be held strictly liable. The defendant has responded by contending that the plaintiffs' claim is preempted by the Federal Boat Safety Act of 1971 ("the Act"), 46 U.S.C. §§ 4301 *et seq.* (West Supp.1990), and that the plaintiffs have failed to state a claim under state tort law in any case.

## DISCUSSION

1. Preemption

■■■ The Act gives the United States Coast Guard the exclusive authority to establish safety regulations for pleasure boats. *Elliott v. Brunswick Corp.*, 903 F.2d 1505, 1508 (11th Cir.1990) *cert. den. Elliott v. Mercury Marine*, —— U.S. ——, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991). It contains a preemption section forbidding a state from establishing or enforcing any safety provision not identical to those contained in the Act, unless the Secretary of Transportation fails to disapprove of a regulation concerning the use of marine safety articles to meet uniquely hazardous local conditions. 46 U.S.C. § 4306. The Act also contains a "savings clause" stating that compliance with the law will not relieve a person from liability at either common or state law. 46 U.S.C. § 4311(g). This case requires the court to interpret these two sections.

The Act requires the Coast Guard to consult with the National Boating Safety Advisory Council ("NBSAC"), 46 U.S.C. § 4302(c)(4), a body established by the Act and whose members are appointed by the Secretary, 46 U.S.C. § 13110. Acting under its statutory authority, the Coast Guard directed NBSAC to examine the feasibility of propeller guards designed to prevent accidents such as the one which gave rise to this case. After much study and public hearings, NBSAC recommended that the Coast Guard take no action to require propeller guards, citing various deficiencies making them technically and economically unworkable at present. The Coast Guard then declined to issue any regulations mandating the use of propeller guards. The defendant claims that this decision under the Act preempts any state law claim against it based on an allegedly defective design due to the lack of a propeller guard on its engine. The plaintiffs contend that the purpose of the Act is to establish only minimum safety regulations, so that the Act's savings clause would allow their suit to proceed.

■ A federal statute may preempt state law (1) explicitly, (2) impliedly where the federal legislation occupies the entire field of regulation and leaves no room for state law or (3) where there is an actual conflict between a state law and a federal statute such that the state law acts as an obstacle to the objective of Congress. *Intl. Paper Co. v. Ouellette,* 479 U.S. 481, 491–92, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987). The preemption doctrine applies not only to state laws and regulations, but common law rules and jury awards of damages as well, since they also act as regulations and can frustrate congressional objectives. *Pennington v. Vistron Corp.,* 876 F.2d 414, 420 (5th Cir.1989); *Palmer v. Liggett Group, Inc.,* 825 F.2d 620, 627–28 (1st Cir.1987).

■ It is clear that the plaintiffs' cause of action is preempted by the Act, which gives the Coast Guard the exclusive authority to establish safety regulations for pleasure boats, *Elliott,* 903 F.2d at 1508, and explicitly provides that all state regulations not identical to the federal rules are invalid, 46 U.S.C. § 4306. In this case, the Coast Guard declined to adopt regulations requiring the use of propeller guards. This implies a decision that this area is best left unregulated, which has as much preemptive effect as a decision to regulate. *See, Arkansas Elec. Coop. v. Arkansas Pub. Serv. Comm'n,* 461 U.S. 375, 383–85, 103 S.Ct. 1905, 1912–13, 76 L.Ed.2d 1 (1983). Indeed, " 'where failure of . . . federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute,' States are not permitted to use their police power to enact such a regulation." *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149, 1153–54 (9th Cir.1983) (quoting *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 178, 98 S.Ct. 988, 1004, 55 L.Ed.2d 179 (1978)). An award of damages to the plaintiffs would be the equivalent of a state regulation which would not be identical to any promulgated under the Act and thus forbidden by the preemption clause.

Additionally, the Act preempts this claim because an award of damages would frustrate the purpose of the Act, which is to promote boating safety by standardizing the regulations applicable to the manufacture of boats. *See, Rubin v. Brutus Corp.,* 487 So.2d 360 (Fla.Dist. Ct.App. 1986); *State v. Nettleton,* 367 So.2d 755 (La.1979). To allow a jury to decide the plaintiffs' claim would set a precedent for allowing other juries nationwide to decide questions of boat safety, which would result in a patchwork of regulations clearly inconsistent with the purpose of the Act.

■ The court does not believe that the Act's savings clause, 46 U.S.C. § 4311(g), preserves the plaintiffs' case. The Supreme Court has explained that the purpose of a similar savings clause in the Interstate Commerce Act, 49 U.S.C. § 1 *et seq.* (1976 ed.), is to avoid the conclusion that Congress intended to occupy the entire field of regulating interstate carriers and thus to withdraw any such questions from state court jurisdiction. *Chicago & N.W.*

*Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 328, 101 S.Ct. 1124, 1135–36, 67 L.Ed.2d 258 (1981) (quoting *Pennsylvania R. Co. v. Puritan Coal Mining Co.*, 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867 (1915) ). A savings clause may not, however, preserve a state law or regulation which conflicts with the objectives of a federal law, even if it is possible to comply with both. *See, Edgar v. Mite Corp.*, 457 U.S. 624, 630–640, 102 S.Ct. 2629, 2634–2639, 73 L.Ed.2d 269 (1982). Likewise, the court believes that Congress did not intend to occupy the entire field of boat safety regulation, but instead through the Act's preemption and savings clauses wished to allow plaintiffs to assert common law claims and state law claims based on state statutes and regulations which have not been displaced by the Act, i.e. rules which are identical to those in the Act and do not conflict with its objectives. (The question of whether a plaintiff could assert a claim under state law for violations of the Act need not be addressed.) There is room for concurrent state and federal regulation, but only to the extent allowed by the federal government. This means that the savings clause cannot permit the present plaintiffs to assert their claim since, as explained above, allowing their claim would be contrary to the non-requirement of propeller guards and to the goal of uniform regulations embodied in the Act.

The plaintiffs have cited two cases, *Rubin*, 487 So.2d 360, and *Mulhern v. Outboard Marine Corp.*, 146 Wis.2d 604, 432 N.W.2d 130 (Wis.Ct.App.1988), in which the Act's savings clause was held to preserve the plaintiffs' causes of action against claims of preemption. Neither of courts which decided these cases, however, were presented with the Coast Guard's reliance on a report like that issued by NBSAC specifically recommending that the alleged deficiency forming the bases of the respective lawsuits not be regulated.

There is no reason to believe that the part of the Act's preemption section allowing states to regulate with regard to uniquely hazardous local conditions, 46 U.S.C. § 4306, applies to this case. The same arguments the plaintiffs have made

about propeller guards could be made in any location. The court disagrees with the plaintiffs' reasoning that a jury verdict in their favor would serve to enhance the purposes of the Act, which they claim only establishes minimum safety standards. Instead, it is apparent that a verdict holding the defendant liable for failing to attach a propeller guard to its engine would be in direct conflict with the Act, since it would upset both the procedure by which the Coast Guard establishes safety regulations for pleasure boats and its exclusive authority to do so. The plaintiffs have attacked the NBSAC report by claiming that it is tainted due to ex parte contacts between one of the Council's members and the boating industry, but the court is satisfied that this claim has no merit. The court concludes, therefore, that the Act preempts the plaintiffs' claim, justifying summary judgment for the defendant.

## 2. State Tort Law

As an alternative to the previous holding, the court finds that the plaintiff is precluded from recovery by the applicable principles of Florida law. (Since the accident occurred in Florida, a Georgia court would apply the law of that state. *See, Yates v. Lowe*, 179 Ga.App. 888, 348 S.E.2d 113 (1986)). Under the laws of Florida applicable to design defects, "[a] product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the manufacturer or the risk of danger in the design outweighs the benefits." *In the Matter of Standard Jury Instructions (Civil Cases)*, 435 So.2d 782, 783 (Fla.1983). Florida thus uses either the consumer expectations test, given in Restatement (Second) of Torts, § 402A comment i, or the risk-benefits test.

An unguarded propeller is not unreasonably dangerous under the consumer expectations test. In *Elliott*, 903 F.2d 1505, the plaintiff sued when injured by a boat's propeller after she jumped into a body of water. She claimed that the defendant should have constructed a propeller

guard that would have protected her. After she won a large verdict in the trial court, the Eleventh Circuit reversed, holding that the consumer expectations test precluded recovery and that the plaintiff had failed to present credible evidence of an alternative design as required by Alabama law.

Citing the same part of the Restatement discussed above in *Standard Jury Instructions,* the court held that under the consumer expectations test, a pleasure boat's unguarded propellers are not dangerous beyond the expectations of the ordinary consumer. 903 F.2d at 1507. Since the consumer expectations test is the same under the law of any state and both *Standard Jury Instructions* and *Elliott* cite the same comment from the Restatement, the fact that the latter case relied on Alabama law does not preclude the ruling from being binding precedent in this case, which relies on Florida law. The defendant's propeller therefore meets the consumer expectations test as a matter of law.

The other basis for assessing alleged design defects under Florida law is the risk-benefits test, which was extensively discussed in *Elliott,* although it was not called by its name. The court in that case engaged in a detailed analysis of the evidence at trial on the issue of whether a feasible propeller guard design existed and stated that "both current industry standards, and the federal regulations, simply reflect the consensus of experts that the industry's adaption of propeller guards at

this point would not only be infeasible, but unwise, unsafe and unfortunate." 903 F.2d at 1509–10. (Again, the fact that *Elliott* interpreted Alabama law is of no consequence since the risk-benefits test is the same in any jurisdiction.) No evidence has been presented to this court which would suggest that this conclusion should be reconsidered due to any advances in technology.

Based on this holding, the NBSAC report[1] and the plaintiffs' failure to present any evidence of a feasible means of utilizing propeller guards in response to this motion, the court holds that the defendant's design passes muster under the risk-benefits test. Under either test used under Florida law, therefore, the plaintiffs have not presented a triable issue and summary judgment for the defendant is justified.

## CONCLUSION

The court finds that the plaintiffs' claim is preempted by federal law and, as an alternative, that they have not presented an issue for trial under the applicable Florida law. The defendant's motion for summary judgment is therefore GRANTED.

SO ORDERED.

---

1. The NBSAC report was cited by the *Elliott* court as bolstering its decision that propeller guards are as yet unfeasible, but the court explicitly left open the question of preemption and in no way based its holding on this possibility. 903 F.2d at 1508 n. 3.