RYAN v BRUNSWICK CORPORATION

Docket No. 102762. Argued November 14, 1996 (Calendar No. 14).
    Decided January 28, 1997.

    Mary E. Ryan, as personal representative of the estate of Stephen
        Ryan, deceased, brought a wrongful death action in the Cass Cir-
        cuit Court against Brunswick Corporation and others, alleging that
        injuries received by the decedent when he was struck by the pro-
        peller of a motorboat while swimming were a result of the defend-
        ants' negligence in failing to design, manufacture, or equip a recrea-
        tional motorboat with a propeller guard and to warn others of dan-
        gers associated with an unguarded propeller. The court, Michael E.
        Dodge, J., granted partial summary disposition for the defendants,
        finding that the claims were preempted by the Federal Boat Safety
        Act. The Court of Appeals, MACKENZIE and J. R. CHYLINSKI, JJ. (NEFF,
        P.J., dissenting), affirmed (Docket No. 163473). The plaintiff
        appeals.

        In a unanimous opinion by Justice BOYLE, the Supreme Court
    held:

        The plaintiff's claims are preempted by the Federal Boat Safety
    Act.

        1. Congress intended the preemption clause of the Federal Boat
    Safety Act to reach claims brought in a state court that a boat is
    defective for failure to have a propeller guard. The act provides
    that a state may not enforce a law or regulation imposing a require-
    ment for associated equipment. State law includes common-law
    actions, and Congress intended that common-law actions be con-
    sidered laws or regulations under the act. Thus, a state claim based
    on the absence of propeller guards is preempted by the federal
    intent that propeller guards should not be required.

        2. A decision not to regulate does not automatically invoke pre-
    emption, but may carry the force of a positive enactment. When a
    federal agency has actively analyzed the proposed area of regula-
    tion and has deliberately concluded that regulation is not appropri-
    ate, federal inaction will preempt state law not identical to it. The
    Coast Guard's decision not to require propeller guards on recrea-
    tional vessels granted manufacturers the opportunity to choose
    whether to install propeller guards on recreational boats. Holding

defendants liable under state tort laws for failing to install a propeller guard would effectively eliminate that choice and would allow juries to do what state legislatures cannot.

3. The saving clause provision of subsection 4311(g) of the act expresses the intent of Congress to preempt state law causes of action, as does the legislative history surrounding the enactment of the FBSA. It would be inconsistent with the language of the act and with the congressional intent to hold that the saving clause preserves the plaintiff's claims from the reach of federal preemption.

Affirmed.

Justice KELLY took no part in the decision of this case.

209 Mich App 519; 531 NW2d 793 (1995) affirmed.

*Conybeare Law Office, P.C.* (by *John C. Johnson*), for the plaintiff-appellant.

*Plunkett & Cooney, P.C.* (by *Mark H. Verwys*), *Smith, Haughey, Rice & Roegge, P.C.* (by *Patrick F. Geary*); *Faegre & Benson, L.L.P.,* of counsel (by *Daniel J. Connolly* and *Mark J. Carpenter*), for the defendants-appellees.

BOYLE, J.

I

In this case we consider whether provisions of the Federal Boat Safety Act (FBSA), 46 USC 4301-4311, preclude claims of negligence arising from the failure to design, manufacture, or equip a recreational motorboat with a propeller guard and the failure to warn others of the dangers associated with the unguarded propeller. We hold that plaintiff's claims are preempted by the actions of the National Boating Safety Advisory Council and the concomitant acceptance by the United States Coast Guard of the recommendation that it "should take no regulatory action to

require propeller guards"[1] that were made under the authority of the Federal Boat Safety Act.

II

Plaintiff-appellant's husband, Stephen J. Ryan, died on September 23, 1989, from injuries he received when he was struck by the propeller of a motorboat while he was swimming. Plaintiff brought this wrongful death action against Bayliner Marine Corporation, Mercury Marine, Division of Brunswick Corporation, Brunswick Corporation, Carl Stirns Marine, and Blue Fin Marina.[2] Motions for partial summary disposition were granted pursuant to MCR 2.116(C)(4) and 2.116(C)(8) on behalf of defendants Bayliner Marine Corporation, Mercury Marine, Brunswick Corporation, and Blue Fin Marina.[3]

---

[1] *Report of the Propeller Guard Subcommittee* at 24 (November 7, 1989).

[2] The complaint alleged that Mercury Marine was negligent in the design and manufacture of its inboard motor, propeller assembly, and replacement propeller system, and in failing to equip the propeller with a guard or protective device to prevent invasive cutting injuries. Similar allegations were brought against the Bayliner and Brunswick Corporations.

Plaintiff contends that Blue Fin Marina was negligent in selling, retailing, distributing, and installing the unguarded replacement propeller, that Carl Stirns Marine was negligent in retailing a defective boat and propeller assembly system, and that the defendants were negligent in failing to warn of the dangers associated with the unguarded motor and propeller system.

Because the plaintiff has not argued that the failure to warn claims should be severed from the claims of negligence for failure to install a propeller guard, we have not analyzed these claims separately.

[3] Arguments on the motions were heard before Judge Michael E. Dodge in the Cass Circuit Court, and an order was entered on March 17, 1993, granting defendants' motions and dismissing plaintiff's propeller guard and duty to warn claims.

The trial court stated:

Following the grant of the motions for partial summary disposition, a stipulation by the parties and an order of dismissal with prejudice of all claims not covered by the court's order was entered.[4] The Court of Appeals affirmed the grant of partial summary disposition, agreeing that the claims were preempted.[5] Because neither Blue Fin Marina nor Carl Stirns Marine have participated in the appellate proceedings, the primary defendant in this appeal is Brunswick Corporation.

---

*The Court*: Based upon the briefs that have been filed and the argument that I have heard I am satisfied that the proper result here is partial summary disposition; that that is dictated by the federal doctrine of preemption; and that the cases which have been cited to me by defendant[s] in their briefs are applicable.

As both Judge Morris in Washtenaw County and Judge Giovan in Wayne County have indicated, it is clear to this Court that the statutory scheme set forth by the Federal Boat Safety Act does constitute preemption in this area; the Court finds that the goal of the act is to provide uniform regulations, and that a jury award would conflict with the objective of that act.

Federal law in my opinion has regulated this area, including common law tort claims, by deciding not to require propeller guards; therefore, plaintiff's tort claim for the absence of such a guard is expressly preempted by the act. Because this Court finds that federal law does preempt state law in this area, the Court necessarily lacks jurisdiction to hear this matter and, accordingly, partial summary disposition is appropriate under (C)(4) for the lack of subject matter jurisdiction, and also as I think correctly argued by the defendant, it fails to state a claim upon which relief can be granted because the failure to equip its product with a propeller guard or to warn of its absence is something that the manufacturer of an outboard or inboard outdrive boat propulsion unit cannot be held liable for. Since that is the case, I grant the defendant's motion for partial summary disposition under both (C)(4) and (C)(8) for those reasons I've indicated.

[4] This order was entered on March 26, 1993. The parties to the stipulation were defendants Mercury Marine, Brunswick Corporation, Bayliner Marine Corporation, Blue Fin Marina, and Carl Stirns Marine.
[5] 209 Mich App 519, 526; 531 NW2d 793 (1995) (one member of the panel dissented, finding persuasive the reasoning of *Moore v Brunswick Bowling & Billiards Corp*, 889 SW2d 246 [Tex, 1994]).

III

The purpose of the FBSA is to promote boating safety. To this end, the act provides a coordinated national boating safety program that unites the federal government and states in an effort to compel manufacturers to provide safer boats and boating equipment to the public. Achievement of this objective is encouraged by requiring that manufacturers comply with safety standards promulgated by the Secretary of Transportation. S Rep No 92-248, 1971 US Code Cong & Admin News (85 Stat 213) 1333. Incentives to state participation are provided through federal grant-in-aid payments to states that have, or that develop, an accepted boat safety program.

Congress grants the Secretary of Transportation exclusive authority to establish national safety standards for recreational vessels and associated equipment. 46 USC 4302(a)(1). To facilitate this duty, the secretary has the option to delegate regulatory functions to a designated agency that then operates under its supervision. 46 USC 4303(a). The United States Coast Guard has been designated as that agency. *Carstensen v Brunswick Corp*, 49 F3d 430, 431 (CA 8, 1995), cert den 516 US 866; 116 S Ct 182; 133 L Ed 2d 120 (1995).

Pursuant to the act, the secretary must consult with the National Boating Safety Advisory Council (NBSAC) concerning the need for regulation in a given area and the extent to which proposed regulations will contribute to recreational boating safety. 46 USC 4302(c)(4).[6]

---

[6] The NBSAC is a twenty-one-member council, comprised of three groups of seven members. Each member of the council is appointed by the Secretary of Transportation and is considered to have particular

In accordance with the act, NBSAC was consulted, and, in 1988, at the request of the Coast Guard, a subcommittee was appointed for the purpose of reviewing and analyzing data involving recreational boating accidents where persons in the water were struck by boat propellers. The subcommittee was commissioned to consider the feasibility of mechanical guards in preventing boat propeller injuries.[7]

---

"expertise, knowledge, and experience in recreational boating safety." 46 USC 13110. The council is made up as follows:

(b)(1) The membership of the Council shall consist of—

(A) 7 representatives of State officials responsible for State boating safety programs;

(B) 7 representatives of recreational vessel manufacturers and associated equipment manufacturers; and

(C) 7 representatives of national recreational boating organizations and from the general public, at least 5 of whom shall be representatives of national recreational boating organizations. [46 USC 13110.]

[7] The charge to the subcommittee was as follows:

* Review the available data on the prevention of propeller-strike accidents and Coast Guard study of various methods of shrouding propellers to prevent contact [with a] person in the water.

* Assess the arguments for and against some form of mechanical guard to protect against propeller strikes reflecting the positions of state boating law administrators, the recreational boating industry, and the boating public.

* Among points to be considered:

a. what is the incidence of such accidents?

b. is there a trend toward more or fewer such accidents?

c. what are the possible solutions and their advantages/disadvantages?

d. how is this problem being addressed in other nations?

e. what would be the direct costs and indirect costs (fuel economy, maintenance, etc.) of mechanical solutions?

f. can the risks be addressed adequately by education?

g. should the Coast Guard move towards a federal requirement for some [sic, kind?] of propeller guard?

h. assess the potential for propeller equipped with each of several propeller guard designs to cause injury. How much has the

After a year-long study and public hearings, the subcommittee reached the unanimous conclusion that the "U.S. Coast Guard should take no regulatory action to require propeller guards." *Report of the Propeller Guard Subcommittee* at 24 (November 7, 1989). The subcommittee resolved that "[t]he development and use of devices such as 'propeller guards' can . . . be counter-productive and can create new hazards of equal or greater consequence." *Id.* at 23. Of the possible negative effects, propeller guards were found to have the potential to "decrease an operator's ability to maintain control over the boat at 'normal' speeds, *increase* the probability of striking a body in the water, and create a possibility of causing greater injury to those struck." *Mowery v Mercury Marine, Div of Brunswick Corp*, 773 F Supp 1012, 1016 (ND Ohio, 1991) (emphasis in the original). The subcommittee's recommendation that regulatory action to require propeller guards not be taken was accepted by both the NBSAC and the United States Coast Guard.

IV

In this case we are faced with the issue of determining whether plaintiff's common-law products lia-

---

propeller guard reduced the injury potential compared to the injury potential of the same propeller operating in an unguarded manner?

i. should only new boats and motors be equipped with propeller guards, or should all boats eventually be equipped with a guard?

j. what is the practical boat length limit beyond which propeller guards would not be required? are there other parameters which would dictate upper limits for guard installation? [*Report of the Propeller Guard Subcommittee* at 1 (November 7, 1989).]

bility claims[8] are preempted under the Federal Boat Safety Act. We hold that they are.

The doctrine of federal preemption has its origin in the Supremacy Clause of article VI, cl 2, of the United States Constitution, which declares that the laws of the United States "shall be the supreme Law of the Land . . . ." Where the principles of federal preemption apply, state courts are deprived of subject matter jurisdiction. Congressional intent is the cornerstone of preemption analysis. *People v Hegedus*, 432 Mich 598, 607; 443 NW2d 127 (1989).[9]

Federal provisions that invalidate state law must be narrowly tailored to support a presumption against preemption of state law. *Medtronic, Inc v Lohr*, 518 US 470, ___; 116 S Ct 2240, 2250; 135 L Ed 2d 700 (1996).[10] State police powers are not to be superseded unless that is the clear and unequivocal intent of Congress. *Cipollone v Liggett Group, Inc*, 505 US 504, 516; 112 S Ct 2608; 120 L Ed 2d 407 (1992). This is especially true where state regulation of matters relating to health and safety are involved. *Hillsborough Co v Automated Medical Labs Inc*, 471 US 707, 715; 105 S Ct 2371; 85 L Ed 2d 714 (1985).

---

[8] Products liability claims in Michigan are based on a single statute, MCL 600.2946; MSA 27A.2946, and are fault based. *Prentis v Yale Mfg Co*, 421 Mich 670; 365 NW2d 176 (1984).

[9] See also *Cipollone v Liggett Group, Inc*, 505 US 504, 516; 112 S Ct 2608; 120 L Ed 2d 407 (1992) (" '[t]he purpose of Congress is the ultimate touchstone' " of preemption analysis, citing *Malone v White Motor Corp*, 435 US 497, 504; 98 S Ct 1185; 55 L Ed 2d 443 [1978], quoting *Retail Clerks Int'l Ass'n v Schermerhorn*, 375 US 96, 103; 84 S Ct 219; 11 L Ed 2d 179 [1963]); *Mowery v Mercury Marine, Div of Brunswick Corp, supra* at 1014 ("To determine whether a claim is preempted, a court must examine Congressional intent," citing *Schneidewind v ANR Pipeline Co*, 485 US 293, 299-300; 108 S Ct 1145; 99 L Ed 2d 316 [1988]).

[10] See *Teper v Park West Galleries*, 431 Mich 202, 208; 427 NW2d 535 (1988).

Of fundamental importance to the resolution of this issue is the premise that the plain meaning of a statute must be given effect unless there is reason to believe that Congress intended a more restrictive reading. *CSX Transportation Inc v Easterwood*, 507 US 658; 113 S Ct 1732; 123 L Ed 2d 387 (1993). The viewing court seeks the intent of Congress from text and the " 'structure and purpose of the statute as a whole' . . . [including] the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic*, 116 S Ct 2251.

Federal preemption is either express or implied. If express, the intent of Congress to preempt state law must be clearly stated in the statute's language or impliedly contained in the statute's structure and purpose. *Cipollone, supra* at 516. In the absence of express preemption, implied preemption may exist in the form of conflict or field preemption. Conflict preemption acts to preempt state law to the extent that it is in direct conflict with federal law or with the purposes and objectives of Congress. Field preemption acts to preempt state law where federal law so thoroughly occupies a legislative field that it is reasonable to infer that Congress did not intend for states to supplement it. *Cipollone, supra* at 516. However, as seven members of the *Cipollone* Court agreed, when "Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a 'reliable indicium of congressional intent with respect to state authority' . . . 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions'

of the legislation." *Id.* at 517, quoting *California Federal Savings & Loan Ass'n v Guerra,* 479 US 272, 282; 107 S Ct 683; 93 L Ed 2d 613 (1987).[11]

V

To resolve the issue of federal preemption before us we examine two provisions of the Federal Boat Safety Act, the federal preemption provision of § 4306, and the saving clause provision of subsection 4311(g). The federal preemption provision reads in relevant part:

> [A] State . . . may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment . . . that is not identical to a regulation prescribed under section 4302 of this title. [46 USC 4306.]

The saving clause provides:

> Compliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law. [46 USC 4311(g).]

---

[11] The *Cipollone* Court further noted:

> We resort to principles of implied pre-emption—that is, inquiring whether Congress has occupied a particular field with the intent to supplant state law or whether state law actually conflicts with federal law . . . only when Congress has been silent with respect to pre-emption. [*Id.* at 532 (Blackmun, J., concurring in part and dissenting in part).]

But see *Freightliner Corp v Myrick,* 514 US 280, 289; 115 S Ct 1483; 131 L Ed 2d 385 (1995) ("At best, *Cipollone* supports an inference that an express pre-emption clause forecloses implied pre-emption; it does not establish a rule").

Plaintiff submits that the use of the term "law or regulation" in § 4306 of the statute is ambiguous and therefore incapable of preempting state common-law causes of action. We disagree, noting that " '[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' " *Cipollone, supra* at 521, citing *San Diego Bldg Trades Council v Garmon*, 359 US 236, 247; 79 S Ct 773; 3 L Ed 2d 775 (1959). " '[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief.' " *Id.*

While common-law damages actions may constitute a form of state regulation, the issue before us is not whether the act preempts common-law remedies for claims supplementary to, but not inconsistent with, federal regulations.[12] The threshold question is, rather, whether Congress intended that common-law causes of action such as those before this Court be considered a "law or regulation" under the act. We find that it did.

In *Cipollone, supra*, the United States Supreme Court was faced with the issue whether preemptive provisions of the Federal Cigarette Labeling and Advertising Act displaced the plaintiff's common-law tort claims. At issue were two statutory provisions of the act, the first enacted in 1965 and the second in

---

[12] The defendant contends both that a state may only regulate identically to federal regulation and, alternatively, that the language of the saving clause establishes a federal floor that the state may supplement. While we are inclined to believe that the latter is the more plausible view, because the former would make the saving clause a nullity, we need not resolve this question given our conclusion that a requirement for a propeller guard conflicts with the federal determination that propeller guards are not required.

1969. The 1965 provision was narrowly drafted and was found only to preempt cautionary statements.[13] The 1969 version, however, was held to have expanded the act's scope of preemption by mandating that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law . . . ." *Cipollone, supra* at 515. Interpreting the 1969 act to preempt common-law regulations, the Court wrote that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Id.* at 521.

Comparing the language in the 1969 preemption clause in *Cipollone* to the language used by Congress in the preemptive clause of the FBSA, we conclude that Congress intended the preemptive clause of the FBSA to reach claims that the product is defective for failure to have a propeller guard or to warn of the dangers of not having such a guard. In *Cipollone, supra,* the statute read "[n]o requirement or prohibition . . . shall be imposed under state law . . . ." The FBSA, on the other hand, declares that a state may not "enforce a law or regulation . . . imposing a requirement for associated equipment . . . ." 46 USC 4306. Noting that *Cipollone* has defined state regulation as

---

[13] 505 US 519-520.

The 1965 version of the statute provided:

> No statement relating to smoking and health, other than the [§ 4] statement . . . shall be required on any cigarette package. [*Id.* at 514.]

encompassing common-law damages actions,[14] we find the difference in the language of the preemption provisions for the purposes of federal preemption to be insignificant.[15]

In so finding, we are cognizant, however, of the Texas Supreme Court decision in *Moore v Brunswick Bowling & Billiards Corp*, 889 SW2d 246 (Tex, 1994), in which the court found, in an identical context, that the plaintiff's products liability claims were not preempted by the FBSA. The learned panel of the Texas Supreme Court wrote:

> We recognize that the term "law" can include both common law and statutory law. However, in *Cipollone*, the Supreme Court stated generally that "the presumption against pre-emption might give good reason to construe the phrase 'state law' in a pre-emption provision more narrowly than an identical phrase in another context." [*Id.* at 249, quoting *Cipollone, supra* at 522.][16]

---

[14] *Goodwin v Bacon*, 127 Wash 2d 50, 61; 896 P2d 673 (1995) ("The relevance of *Cipollone* is its definition of state regulation").

[15] See also *Gorton v American Cyanamid Co*, 194 Wis 2d 203, 215; 533 NW2d 746 (1995) ("[I]t is apparent that state constitutions, state statutes, and state regulations will all be encompassed within the definition of 'state law.' Also falling within the heading of state law [for federal preemption purposes], is the concept of state common law tort actions."); *Cortez v MTD Products, Inc*, 927 F Supp 386, 390 (ND Cal, 1996) ("there is no apparent difference, for purposes of measuring preemptive reach, between a 'requirement or prohibition . . . based on State law,' on the one hand, and . . . a 'standard or regulation' established by a State"); *Edwards v Murray Chris-Craft Sportboats, Inc*, 873 F Supp 618, 621 (MD Fla, 1994) ("The phrase 'law or regulation' in the subject preemption provision clearly encompasses common law actions").

[16] The *Moore* court also based its holding on the fact that Congress has, in various other statutes, directly referred to state common-law causes of action when it intended that those actions be preempted. The court noted that the existence of a saving clause, as well as the "significant state interest at issue," provided grounds for its conclusion that common-law claims were not preempted by the FBSA. *Id.* at 251.

However, the *Moore* court, while perceiving "no basis in the language of the statute or legislative history"[17] to find preemption, failed to address the "long history of preemption in maritime safety matters"[18] that is premised on the need for uniformity and that "assures that manufacture for the domestic trade will not involve compliance with widely varying local regulations."[19] Nor did *Moore* acknowledge that a majority of the *Cipollone* Court, on which *Moore* relied, declined to adopt a narrow interpretation of the term "state law,"[20] or that, because of the inherent conflict between state and federal law,[21] the *Cipollone* Court preempted the plaintiff's claims that relied on a "state law 'requirement or prohibition . . . with respect to . . . advertising or promotion.' "[22]

While we agree that a preemption clause must be narrowly construed, having concluded that state law includes common-law actions, we cannot conclude other than that a state claim based on the absence of propeller guards is preempted by the federal decision

---

[17] *Id.* at 250.

[18] S Rep No 92-248, 1971 US Code Cong & Admin News (85 Stat 213) 1341.

[19] *Id.*

[20] Justice Stevens, joined by Chief Justice Rehnquist and Justices White and O'Connor, concluded that the term "state law" reached beyond "positive enactments" to include some common-law damages actions. *Id.* at 521. Justice Scalia, joined by Justice Thomas, concluded that all the plaintiff's common-law claims were preempted. *Id.* at 548. Only Justice Blackmun, joined by Justices Kennedy and Souter, so narrowly interpreted the statute as to conclude that the plaintiff's common-law actions were not preempted. *Id.* at 531-544.

[21] The federal provision read in part, "[n]o requirement or prohibition . . . shall be imposed . . . with respect to advertising or promotion . . . ." *Id.* at 515.

[22] *Id.* at 524.

that propeller guards should not be required.[23] In so holding, we join numerous other courts that have held that "[c]ommon law causes of action may constitute state regulation and 'impose a requirement' on manufacturers to have propeller guards through an award of damages." *Lewis v Brunswick Corp*, 922 F Supp 613, 615 (SD Ga, 1996).[24]

VI

Plaintiff also contends that the action taken by the Coast Guard was an informal decision rather than a formal regulation as required by the act.[25] Section

---

[23] *Moore* contends that the fact that the *Cipollone* statute did not contain a saving clause supported its conclusion that there was "no 'good reason to believe' that Congress meant less than it said." *Moore*, 889 SW2d 250, n 7, quoting *Cipollone, supra* at 522. While a saving clause is an indication of Congressional intent, given the Court's presumption against preemption in *Cipollone* and the narrow application by the plurality to the various claims at issue in the case, we are unable to conclude that the absence of the clause in that case is a distinction with a difference for this case.

[24] See *Moss v Outboard Marine Corp*, 915 F Supp 183 (ED Cal, 1996); *Carstensen v Brunswick Corp, supra*; *Davis v Brunswick Corp*, 854 F Supp 1574 (ND Ga, 1993); *Shield v Bayliner Marine Corp*, 822 F Supp 81 (D Conn, 1993); *Farner v Brunswick Corp*, 239 Ill App 3d 885; 607 NE2d 562 (1992); *Mowery v Mercury Marine, Div of Brunswick Corp, supra*; *Shields v Outboard Marine Corp*, 776 F Supp 1579 (MD Ga, 1991); *Denison v Brunswick Corp*, Washtenaw Circuit Court (Docket No. 91-041618-CZ, July 10, 1992).

[25] Plaintiff argues that the Federal Administrative Procedures Act, 5 USC 552-553, mandates that formal procedures of notice and publication be followed by an agency that seeks to promulgate rules. Because these formal procedures were not followed by the United States Coast Guard in the instant case, plaintiff contends that the decision not to require regulation in the area of propeller guards is not a formal regulation.

The defendant contends that the United States Coast Guard does not, and never has, provided notification of its intent not to regulate in a given area. As defendant argued, "[w]hy would you cut down trees to print raft after raft after raft of regulation that says 'We're not going to require this. We're not going to require that. We're not going to require this. We're not going to require that' "? We agree with the defendant that it is nonsensical to require the United States Coast Guard to comply with notice provisions

4306 of the FBSA mandates that a state law or regulation shall be preempted if it is not identical to a regulation promulgated under the act. There is no dispute that the action taken by the Coast Guard was a determination not to regulate; propeller guard installation and use were not expressly prohibited by the Coast Guard. The Coast Guard did decide, however, that propeller guards should not be required on recreational watercraft.

A decision not to regulate does not automatically invoke preemption,[26] but may carry the force of a positive enactment. *Arkansas Electric Cooperative v Arkansas Public Service Comm*, 461 US 375, 384; 103 S Ct 1905; 76 L Ed 2d 1 (1983).[27] Nevertheless, when a federal agency has actively analyzed the proposed area of regulation and has deliberately concluded that regulation is not appropriate in a given area, federal inaction will preempt state law not identical to it. This is not to say that inaction indicated preemption, but rather that " '[w]here a comprehensive federal

---

in a situation where the Coast Guard makes a reasoned determination *not to regulate.*

[26] *Freightliner v Myrick*, n 11 *supra* at 286; see also *Toy Mfrs of America, Inc v Blumenthal*, 986 F2d 615, 622 (CA 2, 1992) (a federal decision not to regulate does not automatically invoke preemption of state law: " 'That was obviously not meant in an unqualified sense; otherwise, deliberate federal inaction could always imply pre-emption which cannot be,' " quoting *Puerto Rico Dep't of Consumer Affairs v Isla Petroleum Corp*, 485 US 495, 503; 108 S Ct 1350; 99 L Ed 2d 582 [1988]).

[27] "[A] federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left *un*regulated, and in that event would have as much pre-emptive force as a decision *to* regulate." *Id.* at 384 (emphasis in the original).

See also *Moss v Outboard Marine Corp*, n 24 *supra* at 186; *Carstensen v Brunswick Corp*, *supra* at 431; *Davis v Brunswick Corp*, n 24 *supra* at 1582; *Farner v Brunswick Corp*, n 24 *supra*; *Mowery v Mercury Marine Div of Brunswick Corp*, *supra* at 1016; *Shields v Outboard Marine Corp*, n 24 *supra* at 1581.

scheme intentionally leaves a portion of the regulated field without controls, *then* the preemptive inference can be drawn—not from federal inaction alone, but from inaction joined with action.' " *Toy Mfrs of America, Inc v Blumenthal*, 986 F2d 615, 622 (CA 2, 1992), quoting *Puerto Rico Dep't of Consumer Affairs v Isla Petroleum Corp*, 485 US 495, 503; 108 S Ct 1350; 99 L Ed 2d 582 (1988).[28]

The Coast Guard's decision not to require propeller guards on recreational vessels granted manufacturers the opportunity to choose whether or not they felt it wise to install propeller guards on recreational boats. *Moss v Outboard Marine Corp*, 915 F Supp 183, 186 (ED Cal, 1996); *Mowery, supra* at 1016. Holding defendants liable under state tort laws for failing to install a propeller guard would effectively eliminate that choice. *Davis v Brunswick*, 854 F Supp 1574, 1582 (ND Ga, 1993).[29] More precisely, "it would allow

---

[28] See also *Freightliner v Myrick*, n 11 *supra* at 284-285; *Stanley v Bertram-Trojan, Inc*, 855 F Supp 657, 658 (SD NY, 1994) ("The critical difference between those cases and this is that propeller guards specifically were considered by the Coast Guard as a subject of regulation and were found not feasible because they may increase danger rather than reduce it. . . . There is no evidence here that the Coast Guard ever considered adopting regulations concerning safety standards for hatches"); *Cortez v MTD Products, Inc*, n 15 *supra* at 392-393; *Riley v Becton Dickinson Vascular Access, Inc*, 913 F Supp 879, 893-894 (ED Pa, 1995); *Baltimore & Ohio R Co v Oberly*, 837 F2d 108, 115 (CA 3, 1988) (the EPA's simple statement that it was " 'unnecessary for EPA to establish further property line facility emission standards' " did not meet the level of specificity required to show that the agency intended to preempt state law).

[29] As opposed to a hypothetical state regulation that required more flotation devices than those required by federal regulation, a determination in a given state that a product is defective for failure to have a propeller guard is a condemnation of the product line in the given state, a conclusion that directly implicates the statutory goal of uniformity. *Prentis v Yale Mfg Co*, n 8 *supra* at 689 (the whole product line is "at risk" in a design defect case).

juries to do what state legislatures cannot." *Id.*[30] Accordingly, we find that the Coast Guard's decision not to require propeller guards was an intentional and reasoned determination not to regulate in a given area and "[a]ny state law or regulation requiring manufacturers to install propeller guards would not be identical to the Coast Guard regulatory position." *Carstensen*, 49 F3d 431.[31]

## VII

Plaintiff contends that the saving clause provision of subsection 4311(g), read in conjunction with the federal preemption provision of § 4306, provides a clear indication of the legislative intent not to preempt state common-law causes of action such as those involved here. We disagree.

As evidenced above, the plain meaning of the statute expresses the intent of Congress to preempt state law causes of action such as those brought by plaintiff. The legislative history surrounding the enactment of the FBSA also bears witness to that intent. *Davis, supra* at 1580.

---

[30] See also *Mowery v Mercury Marine Div of Brunswick Corp, supra* at 1017; *Shields v Outboard Marine Corp*, n 24 *supra* at 1581 ("To allow a jury to decide the plaintiffs' claim would set a precedent for allowing other juries nationwide to decide questions of boat safety, which would result in a patchwork of regulations clearly inconsistent with the purpose of the Act").

[31] See *Medtronic, Inc v Lohr, supra*, 116 S Ct 2258, in which the Court, in noting the general applicability of the federal regulations before it, wrote:

> [T]his [is] quite unlike a case in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an unambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers.

In enacting the FBSA, Congress wrote that "the annual loss of life is of [a] sufficiently alarming proportion that the *Federal Government* should require products involved to be built to standards of safety commensurate with the risks associated with their use." S Rep No 92-248, 1971 US Code Cong & Admin News (85 Stat 213) 1334 (emphasis added). States were encouraged to participate in this plan by implementing state boating safety programs. *Id.* at 1333. State participation was also to be encouraged in the enforcement of established regulations. *Id.* at 1334.

Delineating governmental responsibility in this manner was wholly consistent with the underlying goal of the act—to provide uniformity to the recreational boating industry. According to Congress, the "need for uniformity in standards if interstate commerce is not to be unduly impeded supports the establishment of uniform construction and equipment standards at the *Federal* level." *Id.* at 1335 (emphasis added). At the same time, states are left free, and are encouraged, to regulate the operation and use of recreational vessels.[32]

---

[32] The federal preemption provision provides:

This section provides for federal preemption in the issuance of boat and equipment safety standards. This conforms to the long history of preemption in maritime safety matters and is founded on the need for uniformity applicable to vessels moving in interstate commerce. In this case it also assures that manufacture for the domestic trade will not involve compliance with widely varying local requirements. At the same time, it was recognized that there may be serious hazards which are unique to a particular locale and which would justify variances at least with regard to the carriage or use of marine safety articles on boats. Therefore, the section does permit individual States to impose requirements with respect to carrying or using marine safety articles which go beyond the federal requirements when necessary to meet uniquely hazardous local conditions or circumstances. A right of disapproval, however, is

What was taken away by the federal preemption provision was in part restored by the saving clause provision of subsection 4311(g). The legislative history surrounding the enactment of the saving clause provision provides:

> This section . . . is intended to clarify that compliance with the Act or standards, regulations, or orders promulgated thereunder, does not relieve any person from liability at common law or under State law. *The purpose of the section is to assure that in a product liability suit mere compliance by a manufacturer with the minimum standards promulgated under the Act will not be a complete defense to liability. [Id.* at 1352 (emphasis added).]

We find that it would be inconsistent with the language of the statute and with the legislative intent to hold that the saving clause provision preserves plaintiff's claims from the reach of federal preemption. Thus, we join a long line of cases that have similarly held that common-law products liability actions alleging liability for failing to incorporate a propeller guard on a recreational vessel are expressly preempted under the FBSA. We find the analysis in these cases more persuasive than that of the sole case holding to the contrary.[33]

Plaintiff contends that the defendant had a duty to design and manufacture a motor with a propeller

---

reserved to the Secretary to insure that indiscriminate use of state authority does not seriously impinge on the basic need for uniformity.

*The section does not preempt state law or regulation directed at safe boat operation and use, which was felt to be appropriately within the purview of state or local concern. [Id.* at 1341 (emphasis added).]

[33] See *Moore v Brunswick, supra.*

guard. Because state regulations requiring propeller guards are preempted by the FBSA, and because the federal government currently does not require that motors be manufactured with propeller guards, we conclude that the grant of summary disposition pursuant to MCR 2.116(C)(4) and (C)(8) was proper.

VIII

Plaintiff's common-law tort claims are preempted by the Federal Boat Safety Act. For these reasons, we affirm the Court of Appeals decision.

MALLETT, C.J., and BRICKLEY, CAVANAGH, RILEY, and WEAVER, JJ., concurred with BOYLE, J.

KELLY, J., took no part in the decision of this case.