MARTINEZ v FORD MOTOR COMPANY

Docket No. 170424. Submitted November 6, 1996, at Detroit. Decided June 20, 1997, at 9:00 A.M.

Flora Martinez, as the personal representative of the estate of Sylvia Martinez, brought an action in the Sanilac Circuit Court against Ford Motor Company, alleging, in part, that Sylvia Martinez' death was the result of the fact that the 1984 Mustang automobile was defectively designed by the defendant because it lacked passive restraints. The defendant moved for partial summary disposition with respect to the claim based on a lack of passive restraints on the basis that the claim was expressly and impliedly preempted by the National Motor Vehicle Safety Act, 15 USC 1381 *et seq.*, and federal Motor Vehicle Safety Standard 208, 49 CFR 571.208, 54.1.2 (1996). The court, Donald A. Teeple, J., denied the defendant's motion, finding that the preemption clause of the federal act, 15 USC 1392(d), did not expressly preempt state common-law actions and that the savings clause of the act, 15 USC 1397(k), retained all state common-law causes of action. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. Federal preemption of state law can occur in three types of situations: express preemption may be found where Congress specifically indicates in the language of a federal statute the extent to which it intends to preempt state law; implied preemption may be found where the state law at issue regulates conduct in a field that Congress intended the federal government to occupy exclusively; and implied preemption may be found because there is an actual conflict between state law and federal law.

2. 15 USC 1392(d) specifically provided that no state shall have the authority to establish or continue any safety standard with respect to any motor vehicle or its equipment that is not identical to the corresponding federal safety standard. A duty of care that is imposed in a tort action by reason of a state's common law is no different for the purpose of federal preemption than a duty imposed by a positive enactment of a state legislature. Accordingly, the fact that the plaintiff sought to impose liability on the defendant for a failure to provide passive restraints on the basis of a com-

mon-law duty does not avoid the express preemptive effect of Motor Vehicle Safety Standard 208, which was promulgated pursuant to the National Motor Vehicle Safety Act and which specifically allowed motor vehicle manufacturers in 1984 to use a manual lap or shoulder seat belt system rather than a passive restraint system.

3. Implied preemption exists where a state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. Congress declared that the purpose of the National Motor Vehicle Safety Act was to reduce traffic accidents, deaths, and injuries and that that goal was best achieved by federal safety standards that were uniform throughout the country. A state regulation, including one that arises as a part of the state's common law, that requires passive restraints on a vehicle manufactured in 1984 would be in actual conflict with the federal standard set forth in the federal safety regulations applicable to vehicles produced that year and, further, effectively would compel vehicle manufacturers to install passive restraints on all vehicles, thereby defeating the express intent of Congress that manufacturers have flexibility and choice with respect to restraint systems for vehicles produced in 1984. Accordingly, a state common-law standard of care requiring the use of a passive restraint system on a 1984 vehicle is impliedly preempted by the federal legislation and regulation.

4. The savings clause in 15 USC 1397(k), which provided that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law," was not intended to preclude the preemptive effect of 15 USC 1392(d) where the application of a state common-law standard of care would have the effect of defeating the express or implied intent of Congress that a different federal standard be applied. The intent of the savings clause was to prohibit the affirmative defense that compliance with federal standards would preclude common-law liability in connection with matters not covered by federal standards.

5. The trial court erred in denying the defendant's motion for partial summary disposition with respect to plaintiff's claim that liability arose as the result of the failure of the defendant to install passive restraints on the 1984 Mustang in which the deceased was riding at the time of the accident that resulted in her death.

Reversed and remanded.

1. CONFLICT OF LAWS — FEDERAL PREEMPTION.

Federal preemption of state law can occur in three types of situations: express preemption may be found where Congress specifically indicates in the language of a federal statute the extent to which it intends to preempt state law; implied preemption may be

found where the state law at issue regulates conduct in a field that Congress intended the federal government to occupy exclusively; and implied preemption may be found because there is an actual conflict between state law and federal law.

2. CONFLICT OF LAWS — FEDERAL PREEMPTION — COMMON-LAW DUTIES.

A duty of care in a tort action that is imposed by reason of a state's common law is no different for the purpose of federal preemption of state regulation of an area than a duty imposed by a positive enactment of a state legislature.

3. ACTIONS — MOTOR VEHICLES — PASSIVE RESTRAINTS — FEDERAL PREEMPTION.

A state tort claim based on a common-law duty that would impose liability on manufacturers of motor vehicles for their failure to design and install passive restraint devices on vehicles manufactured in 1984 is preempted by the federal regulation of the types of safety restraint devices that could be installed on vehicles manufactured in 1984 (15 USC 1392[d]; 49 CFR 571.208, 54.1.2 [1996]).

4. ACTIONS — MOTOR VEHICLES — FEDERAL PREEMPTION — NATIONAL MOTOR VEHICLE SAFETY ACT — SAVINGS CLAUSE.

The savings clause in the National Motor Vehicle Safety Act was not intended to preclude the preemptive effect of 15 USC 1392(d) where the application of a state common-law standard of care would have the effect of defeating the express and implied intent of Congress that a different federal standard be applied; the intent of the savings clause was to prohibit the affirmative defense that compliance with federal standards would preclude common-law liability in connection with matters not covered by federal standards (15 USC 1397[k]).

*John S. Paterson* and *Kimberly A. Tomczyk* (*Rosemary A. Gordon*, of Counsel), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John E. S. Scott, Richard A. Wilhelm*, and *Michael S. Daar*) (*Parcel, Mauro, Hultin & Spaanstra*, by *Malcolm E. Wheeler*, pro hac vice, of Counsel), for the defendant.

Amicus Curiae:

*McCroskey, Feldman, Cochrane & Brock* (by *Eric Lewis*), *Coben & Ryan* (by *Larry Coben*), and *Arthur H. Bryant,* for Trial Lawyers for Public Justice.

Before: BANDSTRA, P.J., and NEFF and M. E. DODGE*, JJ.

NEFF, J. The question before us is whether federal law preempts a state law tort claim against an automobile manufacturer for failure to design and manufacture an automobile with an airbag or other passive occupant restraint system, when federal regulations permitted the use of manual systems. We join the vast majority of jurisdictions that have addressed this issue[1] and hold that such a common-law claim is preempted.

I

The underlying facts are not in dispute. On November 13, 1988, while driving a 1984 Ford Mustang convertible, plaintiff's decedent was involved in a fatal automobile accident. Plaintiff brought the present action against defendant Ford Motor Company, alleging in part that the Mustang was defectively designed because it lacked "passive restraints and internal guards against the occupant's interaction [with] the convertible top."

Defendant filed a motion for partial summary disposition arguing that plaintiff's "no airbag" claim was expressly and impliedly preempted by the National Motor Vehicle Safety Act (Safety Act), 15 USC 1381 *et*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] See, e.g., *Cellucci v General Motors Corp*, 450 Pa Super 438, 450-451; 676 A2d 253 (1996), and cases cited therein.

*seq.*,[2] and federal Motor Vehicle Safety Standard 208 (Standard 208), 49 CFR 571.208, 54.1.2 (1996). The circuit court denied defendant's motion, finding that the Safety Act's preemption clause[3] does not expressly preempt state common-law actions and that the act's savings clause[4] reserves all state common-law causes of action.

We granted defendant leave to bring this interlocutory appeal.

II

Originally enacted in 1966, the Safety Act directs the Secretary of Transportation or his delegate to establish motor vehicle safety standards, including Standard 208. 15 USC 1392(a). For the 1984 model year, Standard 208 permitted automobile manufacturers to choose among three types of occupant restraint systems to protect front seat occupants in passenger cars: (1) a fully automatic system; (2) an automatic system combined with manual lap and/or shoulder belts; or (3) a wholly manual lap and/or shoulder belt system. It is undisputed that the 1984 Ford Mustang driven by plaintiff's decedent complied with the third option; that is, the vehicle was equipped with lap/shoulder belts, and a warning system. Despite defendant's full compliance with Standard 208, plaintiff's suit alleges, at least in part, that the Mustang was defectively designed because it complied only with this third option, rather than with the first or second option, which include some type of passive

---

[2] The Safety Act was repealed in 1994 and the subject matter was recodified at 49 USC 30101 *et seq.*

[3] 15 USC 1392(d).

[4] 15 USC 1397(k), formerly codified at 15 USC 1397(c).

restraint system. This claim may proceed only if it is not preempted by the Safety Act and Standard 208.

III

Under the Supremacy Clause of the United States Constitution, federal law shall be the supreme law of the land. US Const, art VI, cl 2. "Where the principles of federal preemption apply, state courts are deprived of subject matter jurisdiction." *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997). However, there is a strong presumption against preemption of state law, and preemption will be found only where it is the clear and unequivocal intent of Congress. *Cipollone v Liggett Group, Inc*, 505 US 504, 516; 112 S Ct 2608; 120 L Ed 2d 407 (1992). This is particularly true in the area of health and safety, which has been historically left to state regulation. *Ryan, supra* at 27, citing *Hillsborough Co v Automated Medical Labs, Inc*, 471 US 707, 715; 105 S Ct 2371; 85 L Ed 2d 714 (1985).

Preemption of state law can occur in three types of situations. First, Congress may expressly define in the language of a statute the extent to which it intends to preempt state law. Second, implied preemption may be found where the state law at issue regulates conduct in a field that Congress intended the federal government to occupy exclusively. Third, preemption may be implied because there is an actual conflict between state and federal law. *Cipollone, supra* at 516.

In the present case, we find that the language of the Safety Act expressly preempts plaintiff's "no airbag" claim. We further find that because a successful "no airbag" claim would be in actual conflict with

the Safety Act, plaintiff's claim is also impliedly preempted.

A

Where a statute contains an express preemption clause, the plain wording of the clause must be examined because it contains the "best evidence" of Congress' preemptive intent. *Walker v Johnson & Johnson Vision Products, Inc*, 217 Mich App 705, 711; 552 NW2d 679 (1996). Here, § 1392(d) of the Safety Act, 15 USC 1392(d), provided at the time relevant to this case as follows:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any *safety standard* applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. (Emphasis added.)

In denying defendant's motion for partial summary disposition, the circuit court erroneously determined that because § 1392(d) did not expressly refer to "common law actions," express preemption cannot exist. Our Supreme Court has equated the phrase "law or regulation," as it appears in a preemption clause, with common-law tort liability. *Ryan, supra* at 28-31. Like the phrase "law or regulation" in *Ryan*, we find that the phrase "safety standard" sweeps broadly and suggests no distinction between positive enactments and common-law liability. See *id.* at 32, n 15; accord *CSX Transportation, Inc v Easterwood*, 507 US 658, 664; 113 S Ct 1732; 123 L Ed 2d 387 (1993) (legal duties imposed by common law fall within the

scope of a preemption clause barring any state "law, rule, regulation, order or standard"); *Cipollone, supra* at 521 (" '[(S)tate] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' " Quoting *San Diego Building Trades Council v Garmon*, 359 US 236, 247; 79 S Ct 773; 3 L Ed 2d 775 [1959].). Although § 1392(d) fails to expressly mention "common-law liability," we find that plaintiff's common-law action, if successful, would constitute a "state standard."

Congress has expressly prohibited any state safety standard that is not identical to the applicable federal safety standard. 15 USC 1392(d). A state common-law action sustaining the theory that a vehicle was defective because it lacked an airbag would create a safety standard that is related to the same aspect of performance as Standard 208, but not identical to it. Therefore, plaintiff's "no airbag" claim is expressly preempted.

B

We also find that plaintiff's claim is subject to implied preemption. Implied preemption exists where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Frieghtliner Corp v Myrick*, 514 US 280, 287; 115 S Ct 1483; 131 L Ed 2d 385 (1995); *Cippolone, supra* at 516. To ascertain the full purposes and objectives of Congress, we must examine the statute's stated purposes and policies, as well as the statute's legislative history, where possible. *Ingersoll-*

*Rand Co v McClendon*, 498 US 133, 138; 111 S Ct 478; 112 L Ed 2d 474 (1990). In the present case, we are convinced that Congress' purposes support a finding of implied preemption.

1

Congress declared that the purpose of the Safety Act was "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 USC 1381. To achieve this goal, Congress believed that for the federal standards to be effective, they had to be uniform throughout the country. See 15 USC 1392(d); S Rep No 1301, 89th Cong, 2d Sess 12 (1966), reprinted in 1966 US Code Cong & Admin News 2709, 2720 ("The centralized, mass production, high volume character of the motor vehicle manufacturing industry in the United States requires that motor vehicle safety standards be not only strong and adequately enforced, but that they be uniform throughout the country.").

A state regulation requiring airbags or other passive restraints would destroy the uniformity of the federal standards and is therefore in actual conflict with the Safety Act. Indeed, to hold otherwise would be to permit juries in fifty states to create as many safety standards as there are verdicts. These state common-law damage awards would themselves become the industry standards, clearly frustrating Congress' desire for uniformity.

2

A second method chosen by Congress to achieve the ultimate goal of reducing traffic accident and resultant injuries is to permit automobile manufactur-

ers flexibility and choice in designing occupant restraint systems. *Pokorny v Ford Motor Co*, 902 F2d 1116, 1123-1124 (CA 3, 1990).[5] Standard 208 is an unambiguous example of this congressional policy, authorizing three different types of occupant restraint systems. To allow common-law liability for failure to install airbags or other passive restraint systems would effectively force automobile manufacturers to choose this option rather than one of the other statutorily approved systems. This removal of choice would frustrate the clearly expressed intent of Congress to provide manufacturers flexibility and choice in this area.

---

[5] As the court in *Pokorney, supra* at 1124, noted, this desire for flexibility was both carefully considered and clearly expressed:

That such flexibility and choice is an essential element of the regulatory framework established in Standard 208 has repeatedly been made clear in the regulatory history of this particular safety standard. *See., e.g.,* 49 Fed Reg 28962, 28997 (1984) (Secretary Dole explained that the flexibility and variety built into Standard 208 was needed to "provide sufficient latitude for industry to develop the most effective [occupant restraint] systems" and to help "overcome any concerns about public acceptability by permitting some public choice"); 46 Fed Reg 53419 (1981) (Secretary Lewis determined that air bags and automatic seat belts should not be required, but each should remain only one alternative among several options in satisfying occupant restraint requirements); 42 Fed Reg 5071 (1977) (Secretary Coleman relied on a 1976 document entitled "The Secretary's Decision Concerning Motor Vehicle Occupant Crash Protection" to conclude that passive restraint systems should not be mandated at the time due to public uncertainty). The regulatory history shows that the Department of Transportation, consistent with Congress's intent . . . rejected the idea that air bags or automatic seat belts should become a mandatory requirement for occupant safety [during the 1981 model year]. *See, e.g.,* 49 Fed Reg 29000 (1984) (Department of Transportation "determined that airbags should not be required in all cars"); 42 Fed Reg 5071 (1977) (after considering several alternate approaches to occupant safety under Standard 208, Secretary of Transportation rejected alternatives "mandat[ing] passive restraints on some or all passenger cars" and continued with approach allowing use of manual seat belts).

Because plaintiff's "no airbag" claim, if successful, would create an actual conflict with the regulatory scheme promulgated pursuant to the Safety Act to achieve Congress' stated goals, plaintiff's action is impliedly preempted to the extent that she alleges that the 1984 Ford Mustang was defectively designed because it lacked air bags or another passive restraint system.

IV

We must next consider whether the savings clause in 15 USC 1397(k)—"[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law"—saves plaintiff's claim. Plaintiff argued, and the circuit court agreed, that § 1397(k) means that state common-law remedies against automobile manufacturers are not preempted by the Safety Act. Otherwise, plaintiff argues, automobile "manufacturers would be immune from all claims brought by consumers injured by any restraint system or lack thereof," and consumers would be left without a remedy.

We disagree, because plaintiff's interpretation ignores the clear language of the express preemption clause. See *Gebhardt v O'Rourke*, 444 Mich 535, 542; 510 NW2d 900 (1994) (as far as possible, effect should be given to every phrase, clause, and word of a statute). Moreover, plaintiff's view would retroactively punish manufacturers for exercising a federally authorized choice. We cannot believe this is the result intended by Congress. *Pokorney, supra* at 1125 ("it is well-established that a savings clause like § 1397[k]

does not 'save' common law actions that would subvert a federal statutory or regulatory scheme").

The clear meaning of the Safety Act's savings clause is that compliance with federal standards will not constitute a complete affirmative defense. That is, liability will still exist under common law for a variety of claims relating to automobile safety. For example, automobile manufacturers remain liable under common law for design defects in connection with matters not covered by federal standards. *Myrick, supra* at 287-288. Manufacturers may also be liable for defects connected with the particular design and manufacture of the particular occupant restraint system chosen. See *Perry v Mercedes Benz of North America, Inc,* 957 F2d 1257, 1265 (CA 5, 1992) (no preemption for installation of defective airbags).

v

To the extent that plaintiff's action is based on the lack of air bags or another passive occupant restraint system in the 1984 Ford Mustang, it is preempted by the Safety Act and Standard 208. We therefore reverse the circuit court order denying defendant's motion for partial summary disposition and remand this case with instructions to enter summary disposition in favor of defendant on those claims predicated on defendant's failure to install airbags or other passive restraint system authorized in Standard 208 and for further proceedings consistent with this opinion.[6]

Reversed and remanded. We do not retain jurisdiction.

---

[6] Because we reverse the trial court's order, defendant's challenge to the circuit court's award of costs is moot.