# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

FOSTER v FOSTER

Docket No. 161892. Argued November 9, 2021 (Calendar No. 2). Decided April 5, 2022.

Plaintiff, Deborah L. Foster, sought to hold defendant, Ray J. Foster, in contempt in the Dickinson Circuit Court, Family Division, for failing to abide by a provision in their consent judgment of divorce. The judgment stated that defendant would pay plaintiff 50% of his military disposable retired pay accrued during the marriage or, if defendant waived a portion of his military retirement benefits in order to receive military disability benefits, that he would continue to pay plaintiff an amount equal to what she would have received had defendant not elected to receive such disability benefits (the offset provision). Defendant subsequently elected to receive increased disability benefits, including Combat-Related Special Compensation (CRSC) under 10 USC 1413a. That election reduced the amount of retirement pay defendant received, which, in turn, reduced plaintiff's share of the retirement benefits from approximately $800 a month to approximately $200 a month. Defendant did not comply with the offset provision by paying plaintiff the difference. In response to plaintiff's petition seeking to hold him in contempt, defendant argued that, under federal law, CRSC benefits may not be divided in a divorce action. The court, Thomas D. Slagle, J., denied plaintiff's request to hold defendant in contempt but ordered defendant to comply with the consent judgment. Defendant failed to do so, and plaintiff again petitioned for defendant to be held in contempt. Defendant did not appear at the hearing but argued in his written response that the federal courts had jurisdiction over the issue. The court found defendant in contempt, granted a money judgment in favor of plaintiff, and issued a bench warrant for defendant's arrest because of his failure to appear at the hearing. At a show-cause hearing in June 2014, defendant argued that 10 USC 1408 and 38 USC 5301 prohibited him from assigning his disability benefits and that the trial court had erred by not complying with federal law. The court found defendant in contempt and ordered him to pay the arrearage and attorney fees. Defendant appealed in the Court of Appeals, arguing that the trial court erred when it failed to hold that plaintiff's attempts to enforce the consent judgment were preempted by federal law. In an unpublished per curiam opinion, issued October 13, 2016 (Docket No. 324853), the Court of Appeals, MARKEY, P.J., and MURPHY and RONAYNE KRAUSE, JJ., affirmed the trial court's contempt order, reasoning that the matter was not preempted by federal law. Defendant sought leave to appeal in the Michigan Supreme Court. In lieu of granting leave to appeal, the Michigan Supreme Court vacated the judgment of the Court of Appeals and remanded the case to that Court for reconsideration in light of *Howell v Howell*, 581 US ___; 137 S Ct 1400 (2017). 501 Mich 917 (2017). On remand, in an unpublished per curiam opinion issued March 22, 2018 (Docket No.

324853), the same panel of the Court of Appeals again affirmed the trial court's contempt finding, reasoning that defendant's appeal was an improper collateral attack on the consent judgment. The Court of Appeals also distinguished *Howell* and determined that it was still bound by *Megee v Carmine*, 290 Mich App 551 (2010), which held that a veteran is obligated to compensate a former spouse in an amount equal to the share of retirement pay that the nonveteran spouse would have received, pursuant to a divorce judgment, had the veteran not elected to waive military retirement pay in favor of CRSC. Defendant again sought leave to appeal in the Michigan Supreme Court, and the Michigan Supreme Court granted the application. 503 Mich 892 (2018). In a unanimous opinion, the Michigan Supreme Court overruled *Megee*, concluding that federal law preempted state law such that the consent judgment was unenforceable to the extent that it required defendant to reimburse plaintiff for the reduction in the amount payable to her because of his election to receive CRSC. The Michigan Supreme Court vacated the portion of the Court of Appeals' opinion regarding collateral attack and remanded to the Court of Appeals for that Court to address the effect of the Michigan Supreme Court's holdings on defendant's ability to challenge the terms of the consent judgment. 505 Mich 151 (2020). On second remand, in an unpublished per curiam opinion issued July 30, 2020 (Docket No. 324853), the Court of Appeals, MARKEY, P.J., and BORRELLO and RONAYNE KRAUSE, JJ., reversed, concluding that the state trial court was deprived of subject-matter jurisdiction because of principles of federal preemption, that defendant did not engage in an improper collateral attack on the consent judgment, and that the trial court lacked subject-matter jurisdiction to enforce the consent judgment with respect to the offset provision because of federal preemption. Plaintiff sought leave to appeal in the Michigan Supreme Court, and the Michigan Supreme Court granted the application. 506 Mich 1030 (2020).

In a unanimous opinion by Justice VIVIANO, the Michigan Supreme Court *held*:

Federal preemption under 10 USC 1408 and 38 USC 5301 does not deprive Michigan state courts of subject-matter jurisdiction over a divorce action involving the division of marital property. Therefore, while the offset provision in the parties' consent judgment of divorce was a mistake in the exercise of undoubted jurisdiction, that consent judgment was not subject to collateral attack. Because there was no other justification for a collateral attack on the consent judgment, the judgment of the Court of Appeals was reversed, and the case was remanded to the Dickinson Circuit Court for further proceedings. The statement in *Ryan v Brunswick Corp*, 454 Mich 20, 27 (1997), that "[w]here the principles of federal preemption apply, state courts are deprived of subject matter jurisdiction" was disavowed, and *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132 (2010), was overruled to the extent it suggested that all types of federal preemption may deprive a state court of subject-matter jurisdiction; the preemption doctrine does not deprive state courts of subject-matter jurisdiction over claims involving federal preemption unless Congress has given exclusive jurisdiction to a federal forum.

1. The doctrine of res judicata bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. A judgment of divorce dividing marital property is res judicata and not subject to collateral attack even if the judgment may be have been wrong or rested on a subsequently overruled legal principle; in other words, the doctrine of res judicata applies to a valid but erroneous judgment. A divorce decree that has become final may not have its property-settlement provisions modified except for fraud or for

other such causes as any other final decree may be modified. The doctrine of res judicata in this context is an issue of state law. Thus, a provision in a consent judgment of divorce that divides a veteran's military retirement and disability benefits is generally enforceable under the doctrine of res judicata even though it is preempted by federal law.

2. There is a distinction between a court's jurisdiction of the parties and the subject matter of the action, on the one hand, and the court's erroneous exercise of that jurisdiction. To that end, when a court has personal jurisdiction over the parties and has jurisdiction over the subject matter of the action but erroneously exercises jurisdiction—such as when a property settlement in a divorce action conflicts with federal law—any error in the exercise of jurisdiction by the trial court can only be corrected by direct appeal. In contrast, when the trial court lacks personal jurisdiction over the parties or subject-matter jurisdiction, any judgment by the court is void and may be assailed by both direct appeal and collateral attack. The preemption doctrine does not deprive state courts of subject-matter jurisdiction over claims involving federal preemption unless Congress has given exclusive jurisdiction to a federal forum. Generally, state law controls matters of domestic relations. For that reason, before state law governing domestic relations will be overridden as preempted by federal law, it must do major damage to clear and substantial federal interests. To determine whether Congress has impliedly preempted state law, a court must (1) determine whether Congress has preempted states from legislating or regulating the subject matter of the instant case and (2) if Congress has, the court must determine whether it has also vested exclusive jurisdiction of that subject matter in the federal court system. Regarding the division of military benefits, 38 USC 511(a) provides that the Secretary of Veterans Affairs shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans and generally precludes review of the Secretary's decision as to any such question by any other official or by any court, with a limited number of exceptions. In turn, 38 USC 5307 provides for a process of requesting apportionment of a veteran's benefits. The trial court in this case did not review a decision of the Secretary of Veterans Affairs under 38 USC 511(a). There is no exclusive federal forum for dividing military disability benefits in divorce actions. Thus, while the Secretary has authority under 38 USC 511 over the distribution of military benefits, 38 USC 511 does not refer to, restrict, or displace state court jurisdiction in divorce actions. Because of that, federal preemption under 10 USC 1408 and 38 USC 5301 does not deprive Michigan state courts of subject-matter jurisdiction over a divorce action involving the division of marital property that includes the division of military retirement pay and disability benefits contrary to federal law.

3. In this case, even though the offset provision in the consent judgment was contrary to federal law, the judgment was not void or subject to collateral attack, because the type of federal preemption at issue does not deprive Michigan courts of subject-matter jurisdiction and there was no other justification for a collateral attack on the consent judgment. Accordingly, the Court of Appeals erred when it concluded that the type of federal preemption at issue in this case deprived state courts of subject-matter jurisdiction.

Court of Appeals judgment reversed; case remanded to the trial court for further proceedings.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED April 5, 2022

STATE OF MICHIGAN

SUPREME COURT

DEBORAH LYNN FOSTER,

      Plaintiff/Counterdefendant-
      Appellant,

v

No. 161892

RAY JAMES FOSTER,

      Defendant/Counterplaintiff-
      Appellee.

BEFORE THE ENTIRE BENCH

VIVIANO, J.

At issue presently in this case is whether defendant can collaterally attack a provision in the parties' consent judgment of divorce related to the division of defendant's military retirement benefits on the ground that it conflicts with federal law. We previously held, among other things, that "[t]he trial court was preempted under federal law from including in the consent judgment the . . . provision on which plaintiff relies." *Foster v*

*Foster*, 505 Mich 151, 175; 949 NW2d 102 (2020) (*Foster I*). But we "express[ed] no opinion on the effect our holdings have on defendant's ability to challenge, on collateral review, the consent judgment" and, instead, "remand[ed] the case to the Court of Appeals so that the panel [could] address the effect of our holdings on defendants' ability to challenge the terms of the consent judgment." *Id*. at 175, 175-176. On remand, the Court of Appeals held that "[s]tate courts are deprived of subject-matter jurisdiction when principles of federal preemption are applicable." *Foster v Foster (On Second Remand)*, unpublished per curiam opinion of the Court of Appeals, issued July 30, 2020 (Docket No. 324853) (*Foster II*), p 2. Because "an error in the exercise of a court's subject-matter jurisdiction can be collaterally attacked," the Court of Appeals concluded that "defendant did not engage in an improper collateral attack on the consent judgment . . . ." *Id*. We disagree. Instead, we hold that the type of federal preemption at issue in this case does not deprive state courts of subject-matter jurisdiction. As a result, we conclude that defendant's challenge to enforcement of the provision at issue is an improper collateral attack on a final judgment.

## I. FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are adequately set forth in our previous opinion, *Foster I*, 505 Mich at 157-161, and need not be restated in their entirety here. For purposes of this opinion, it is sufficient to highlight the following points.

The parties' consent judgment of divorce was entered in December 2008. At the time of the divorce, defendant was receiving both military retirement pay and military disability benefits for injuries he sustained during the Iraq War. Pursuant to their property

settlement, plaintiff was awarded 50% of defendant's retirement pay, also known as "disposable military retired pay." She was not awarded any of defendant's military disability benefits. To protect plaintiff in the event that defendant became entitled to (and accepted) more disability benefits than he currently received, consequently diminishing the retirement benefits that were divided and awarded to plaintiff, the parties agreed to include a provision in the consent judgment of divorce that has become known as the "offset provision." In the offset provision, if defendant elected to receive an increase in disability pay, he agreed to pay plaintiff an amount equal to what she would have received had defendant not elected to do so.[1]

In February 2010, defendant became eligible for, and elected to receive, increased disability benefits, which included Combat-Related Special Compensation (CRSC).[2] As a

---

[1] The offset provision states as follows:

> If Defendant should ever become disabled, either partially or in whole, then Plaintiff's share of Defendant's entitlement shall be calculated as if Defendant had not become disabled. Defendant shall be responsible to pay, directly to Plaintiff, the sum to which she would be entitled if Defendant had not become disabled. Defendant shall pay this sum to Plaintiff out of his own pocket and earnings, whether he is paying that sum from his disability pay or otherwise, even if the military refuses to pay those sums directly to Plaintiff. If the military merely reduces, but does not entirely stop, direct payment to Plaintiff, Defendant shall be responsible to pay directly to Plaintiff any decrease in pay that Plaintiff should have been awarded had Defendant not become disabled, together with any Cost of Living increases that Plaintiff would have received had Defendant not become disabled. Failure of Defendant to pay these amounts is punishable through all contempt powers of the Court.

[2] Under federal law, a retired veteran's retirement pay can be divided with a former spouse in divorce proceedings, but disability pay cannot. See 10 USC 1408(c) (permitting division of "disposable retired pay"); 10 USC 1408(a)(4)(A) (defining "disposable retired pay"). See generally Sullivan & Raphun, *Dividing Military Retired Pay: Disability Payments and*

result, the amount plaintiff received each month decreased from approximately $800 to approximately $200. Defendant failed to comply with the offset provision by paying plaintiff the difference.

In May 2010, plaintiff filed a petition seeking to hold defendant in contempt for failing to comply with the consent judgment. A few months later, defendant argued, for the first time, that under federal law, CRSC benefits are not subject to division in a divorce action. In an opinion and order dated October 8, 2010, the trial court denied plaintiff's request to hold defendant in contempt but ordered defendant to comply with the provisions of the judgment. The trial court acknowledged that it did not have the power to divide military disability pay but noted that the parties here had agreed upon the division and neither party had moved to set aside the judgment on the ground of mutual mistake. The

---

*the Puzzle of the Parachute Pension*, 24 J Am Acad Matrimonial L 147, 148-150, 152-153 (2011). In order to prevent retired veterans from double-dipping from retirement and disability entitlements, federal law generally requires that a retired veteran receiving both retirement pay and disability benefits give up an amount of retirement pay equal to the amount of disability benefits the veteran is receiving. See 38 USC 5304 (generally prohibiting duplication of benefits); 38 USC 5305 (allowing waiver of retirement pay to receive other benefits). This waiver is sometimes referred to as the "VA waiver." See *Dividing Military Retired Pay: Disability Payments and the Puzzle of the Parachute Pension*, 24 J Am Acad Matrimonial L at 152. The VA waiver reduces the amount of retired pay the veteran receives, which reduces the sum of money being divided with a former spouse. *Id*. CRSC is an exception to the antidouble-dipping rule. CRSC payments "are not retired pay." 10 USC 1413a(g). CRSC is an additional payment to a veteran, on top of disability pay, in the same amount as the reduction to the veteran's retired pay as a result of the VA waiver. However, CRSC payments, like disability payments, are also not divisible with a former spouse in divorce proceedings. See *Foster I*, 505 Mich at 171; Defense Finance and Accounting Service, *Comparing CRSC and CRDP* <https://www.dfas.mil/retiredmilitary/disability/comparison.html> (accessed March 9, 2022) [https:perma.cc/77E7-CAS9]. See generally *Dividing Military Retired Pay: Disability Payments and the Puzzle of the Parachute Pension*, 24 J Am Acad Matrimonial L at 163.

4

trial court warned that if defendant failed to comply with the order that he would be held in contempt.

On March 25, 2011, plaintiff filed a petition to hold defendant in contempt, alleging that he had not made any payments as ordered. Although he did not appear at the hearing, defendant filed a response, arguing that he was not in contempt and, for the first time, arguing that the issue was within the jurisdiction of the federal courts. On May 10, 2011, the trial court entered an order holding defendant in contempt, granting a money judgment to plaintiff, and issuing a bench warrant for defendant's arrest because he did not appear at the hearing.

At a show-cause hearing on June 27, 2014, defendant, relying on 10 USC 1408 and 38 USC 5301, argued that he could not assign his disability benefits and that the trial court had erred by not complying with federal law. The trial court observed, "[W]e have litigated this issue and re-litigated this issue and it has not been properly appealed." The trial court ordered plaintiff to pay the arrearage.

On September 22, 2014, the trial court entered an order holding defendant in contempt and ordering him to pay the arrearage and attorney fees. Defendant appealed that order in the Court of Appeals.

The Court of Appeals initially affirmed the trial court order. *Foster v Foster*, unpublished per curiam opinion of the Court of Appeals, issued October 13, 2016 (Docket No. 324853). Defendant sought leave to appeal in this Court. We vacated the judgment and remanded the case to the Court of Appeals for reconsideration in light of *Howell v Howell*, 581 US ___; 137 S Ct 1400; 197 L Ed 2d 781 (2017). *Foster v Foster*, 501 Mich 917 (2017). The Court of Appeals again affirmed. *Foster v Foster (On Remand)*,

5

unpublished per curiam opinion of the Court of Appeals, issued March 22, 2018 (Docket No. 324853).

Defendant again sought leave to appeal in this Court. After granting the application, the Court held as follows:

> We conclude that federal law preempts state law such that the consent judgment is unenforceable to the extent that it required defendant to reimburse plaintiff for the reduction in the amount payable to her due to his election to receive CRSC. Although the Court of Appeals indicated its agreement with plaintiff's assertion that defendant was engaging in an improper collateral attack against the consent judgment, the panel did not discuss the effect of federal preemption on the trial court's subject-matter jurisdiction or defendant's ability to challenge the terms of the consent judgment outside of direct appeal. Because these questions remain important, we vacate that portion of the Court of Appeals' opinion agreeing with plaintiff that defendant was engaging in an improper collateral attack and reverse the balance of the Court of Appeals' opinion in this case. Moreover, we overrule the Court of Appeals' opinion in *Megee v Carmine*, [290 Mich App 551, 574-575; 802 NW2d 669 (2010),] which held that a veteran is obligated to compensate a former spouse in an amount equal to the share of retirement pay that the nonveteran spouse would have received, pursuant to a divorce judgment, had the veteran not elected to waive military retirement pay in favor of CRSC. This case is remanded to the Court of Appeals so that the panel may address the effect of our holdings on defendant's ability to challenge the terms of the consent judgment. [*Foster I*, 505 Mich at 156 (citation omitted).]

On the second remand, the Court of Appeals reversed in *Foster II*. After a lengthy block quote of this Court's opinion in *Foster I*, the Court of Appeals dedicated a single paragraph to the issue of subject-matter jurisdiction. It cited *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997), abrogated in part on other grounds in *Sprietsma v Mercury Marine*, 537 US 51, 63-64 (2002); *People v Kanaan*, 278 Mich App 594, 602; 751 NW2d 57 (2008); and *Konynenbelt v Flagstar Bank, FSB*, 242 Mich App 21, 25; 617 NW2d 706 (2000), for the proposition that state courts are deprived of subject-matter

6

jurisdiction when principles of federal preemption are applicable. The Court concluded that "defendant did not engage in an improper collateral attack on the consent judgment and the trial court lacked subject-matter jurisdiction to enforce the consent judgment with respect to the offset provision due to the principle of federal preemption." *Foster II*, unpub op at 2.

Plaintiff sought leave to appeal in this Court, and we granted plaintiff's application to address

> whether the defendant has the ability to challenge the relevant term of the consent judgment in this case given that federal law precludes a provision requiring that the plaintiff receive reimbursement or indemnification payments to compensate for reductions in the defendant's military retirement pay resulting from his election to receive any disability benefits. See *Howell v Howell*, 581 US ___; 137 S Ct 400; 197 L Ed 2d 781 (2017). [*Foster v Foster*, 506 Mich 1030 (2020).]

## II. STANDARD OF REVIEW

The application of the doctrine of res judicata is a question of law that we review de novo. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). Questions of subject-matter jurisdiction are also questions of law that we review de novo. *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017).

## III. ANALYSIS

This Court previously held that the offset provision in the parties' consent judgment of divorce impermissibly divides defendant's military disability pay in violation of federal law. See *Foster I*, 505 Mich at 175 ("The trial court was preempted under federal law from including in the consent judgment the offset provision on which plaintiff relies."). We

7

must now answer the question we left open in *Foster I*: whether defendant may challenge this provision of the consent judgment on collateral review.

A.  THE DOCTRINE OF RES JUDICATA APPLIES TO JUDGMENTS THAT DIVIDE MILITARY RETIREMENT AND DISABILITY BENEFITS

We have previously explained the doctrine of res judicata as follows:

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action.  The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.  This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004) (citation omitted).]

Importantly for purposes of this case, the doctrine of res judicata applies even if the prior judgment rested on an invalid legal principle.  See *Colestock v Colestock*, 135 Mich App 393, 397-398; 354 NW2d 354 (1984) ("A judgment of divorce dividing marital property is res judicata and not subject to collateral attack, even if the judgment may have been wrong or rested on a subsequently overruled legal principle."); *Detwiler v Glavin*, 377 Mich 1, 14; 138 NW2d 336 (1965) (holding that the doctrine of res judicata applies to "a valid but erroneous judgment").  See also *Federated Dep't Stores, Inc v Moitie*, 452 US 394, 398; 101 S Ct 2424; 69 LEd2d 103 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.").

This Court has long recognized as "a settled rule of law that a divorce decree which has become final may not have its property settlement provisions modified except for fraud

or for other such causes as any other final decree may be modified." *Pierson v Pierson*, 351 Mich 637, 645; 88 NW2d 500 (1958).[3] The Court of Appeals has explained why finality in this context is extremely important:

> Public policy demands finality of litigation in the area of family law to preserve surviving family structure. To permit divorce judgments which have long since become final to be reopened so as to award military pensions to the husband as his separate property would flaunt the rule of res judicata and upset settled property distributions upon which parties have planned their lives. The consequences would be devastating, not only from the standpoint of the litigants, but also in terms of the work load of the courts. [*McGinn v McGinn*, 126 Mich App 689, 693; 337 NW2d 632 (1983) (citation omitted).][4]

The United States Supreme Court has recognized that the application of the doctrine of res judicata in this context is an issue of state law. See *Mansell v Mansell*, 490 US 581, 586 n 5; 109 S Ct 2023; 104 L Ed 2d 675 (1989) ("Whether the doctrine of res judicata . . . should have barred the reopening of pre-*McCarty* [*v McCarty*, 453 US 210; 101 S Ct 2728; 69 L Ed 2d 589 (1981),] settlements is a matter of state law over which we have no jurisdiction."). See also 2 Turner, Equitable Distribution of Property (4th ed), § 6:6, p 49 (noting that the Court had dismissed in *Sheldon v Sheldon*, 456 US 941 (1982),

---

[3] See also *Keeney v Keeney*, 374 Mich 660, 663; 133 NW2d 199 (1965); *Greene v Greene*, 357 Mich 196, 201; 98 NW2d 519 (1959); and *Roddy v Roddy*, 342 Mich 66, 69; 68 NW2d 762 (1955).

[4] See also *Staple v Staple*, 241 Mich App 562, 579; 616 NW2d 219 (2000) ("The Family Law Section of the State Bar, representing more than three thousand family law specialists, elaborates on the public policy value of finality in divorce cases: 'There is probably not a single family law practitioner in the State of Michigan who would not advocate the importance of finality in their divorce cases. Divorce cases, by their nature, involve parties coming together and resolving contentious matters. . . . The parties, after the divorce, wish to go on in their separate lives and not . . . be subject to future petitions for relief . . . .' ").

for want of a substantial federal question, a petition raising the issue of whether " 'federal preemption of state community property laws regarding division of military retirement pay render state judgments void for lack of subject matter jurisdiction where such judgments were entered after Congress had preempted area of law' ").[5]

Applying these principles, the provision of the parties' consent judgment of divorce that divides defendant's military retirement and disability benefits is generally enforceable under the doctrine of res judicata even though it is preempted by federal law.  See generally *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998) (noting that "[a] party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt").[6]

## B.  THE PARTIES' DIVORCE JUDGMENT IS NOT VOID AND THEREFORE IS NOT SUBJECT TO COLLATERAL ATTACK

Even though it is otherwise enforceable, defendant argues that because the offset provision is preempted by federal law, it is automatically void and, therefore, subject to

---

[5] As this Court has recognized, this type of dismissal indicates "that all the issues properly presented to the Supreme Court have been considered on the merits and held to be without substance; for this reason, the adjudication is binding precedent under the doctrine of stare decisis with respect to those issues when raised in subsequent matters."  *Gora v Ferndale*, 456 Mich 704, 713; 576 NW2d 141 (1998) (quotation marks and citations omitted).

[6] It is worth noting that our holding places us in good company because the majority of state courts have held that "military benefits of all sorts can be divided under the law of res judicata."  Turner, § 6:9, p 72.  See *id*. at 72-73 n 4 (listing cases).  A minority of state courts hold to the contrary.  See *id*. at 74 n 9 (listing cases and text accompanying).  However, as the author observes, "[n]one of these decisions cite either *Sheldon* or footnote 5 in *Mansell*," and "[n]one have showed any awareness of the postremand history of *Mansell*[.]"  *Id*. at 74.

10

collateral attack at any time.[7] As an initial matter, defendant asserts that a judgment containing a provision that exceeds the limits of the trial court's authority is void. However, as we explained in *Buczkowski v Buczkowski*, 351 Mich 216, 221-222; 88 NW2d 416 (1958), there is an important distinction between the court's jurisdiction of the parties and the subject matter of the suit, on the one hand, and the court's erroneous exercise of that jurisdiction, on the other:

> The failure to distinguish between "the erroneous exercise of jurisdiction" and "the want of jurisdiction" is a fruitful source of confusion and errancy of decision. In the first case the errors of the trial court can only be corrected by appeal or writ of error. In the last case its judgments are void, and may be assailed by indirect as well as direct attack. The judgment of a court of general jurisdiction, with the parties before it, and with power to grant or refuse relief in the case presented, though (the judgment is) contrary to law as expressed in the decisions of the supreme court or the terms of a statute, is at most only an erroneous exercise of jurisdiction, and as such is impregnable to an assault in a collateral proceeding.
>
> The loose practice has grown up, even in some opinions, of saying that a court had no "jurisdiction" to take certain legal action when what is actually meant is that the court had no legal "right" to take the action, that it was in error. If the loose meaning were correct it would reduce the doctrine

---

[7] This Court has long recognized a distinction between a judgment that is void and one that is voidable. See *Clark v Holmes*, 1 Doug 390, 393 (1844) ("It is a well settled doctrine that, when proceeding to exercise the powers conferred, [inferior courts of special and limited jurisdiction] must have jurisdiction of the person, by means of the proper process or appearance of the party, as well as of the subject matter of the suit; and when they thus have jurisdiction of the person and the cause, if in the further proceedings they commit error, the proceedings are not void, but only voidable, and may be reversed for error by the proper court of review where a power of review is given; . . . but on the contrary, when they have not such jurisdiction of the cause and of the person, their proceedings are absolutely void, and cannot afford any justification or protection, and they became trespassers by any act done to enforce them."). See also 3 Longhofer, Michigan Court Rules Practice (7th ed), § 2612.13, pp 624-625 (discussing the distinction between void and voidable judgments).

of *res judicata* to a shambles and provoke endless litigation, since any decree or judgment of an erring tribunal would be a mere nullity. It must constantly be borne in mind, as we have pointed out in *Jackson City Bank & Trust Co. v Fredrick*, 271 Mich 538, 544[; 260 NW 908 (1935)], that:

> There is a wide difference between a want of jurisdiction, in which case the court has no power to adjudicate at all, and a mistake in the exercise of undoubted jurisdiction, in which case the action of the trial court is not void although it may be subject to direct attack on appeal. This fundamental distinction runs through all the cases.[8]

In *In re Ferranti*, 504 Mich 1, 22; 934 NW2d 610 (2019), again quoting from *Jackson City Bank*, we explained that only judgments entered without personal jurisdiction or subject-matter jurisdiction are void and subject to collateral attack:

> "[W]hen there is a want of jurisdiction over the parties, or the subject-matter, no matter what formalities may have been taken by the trial court, the action thereof is void because of its want of jurisdiction, and consequently its proceedings may be questioned collaterally as well as directly. They are of no more value than as though they did not exist. But in cases where the court has undoubted jurisdiction of the subject matter, and of the parties, the action of the trial court, though involving an erroneous exercise of jurisdiction, which might be taken advantage of by direct appeal, or by direct attack, yet the judgment or decree is not void though it might be set aside for the irregular or erroneous exercise of jurisdiction if appealed from. It may not be called in question collaterally." [*Ferranti*, 504 Mich at 22, quoting *Jackson City Bank*, 271 Mich at 544-545.]

---

[8] *Buczkowski*, 351 Mich at 221-222 (cleaned up). See also *People v Washington*, 508 Mich ___; ___ NW2d ___ (2021), slip op at 10-11 ("The prosecutor is correct that there is a widespread and unfortunate practice among both state and federal courts of using the term 'jurisdiction' imprecisely, to refer both to the subject-matter and the personal jurisdiction of the court, and to the court's general authority to take action."); *id*. at ___ n 5; slip op at 12 n 5 (noting that "the terms 'power' and 'authority' are generally used to refer to errors in the exercise of jurisdiction and other nonjurisdictional errors").

As these authorities make clear, defendant's assertion that the judgment is void and subject to collateral attack simply because it conflicts with federal law is "manifestly in error." *Buczkowski*, 351 Mich at 221.

Next, defendant argues that the judgment is void and subject to collateral attack because Congress deprived state courts of subject-matter jurisdiction over the division of military disability benefits.[9] To prevail on this argument, defendant must demonstrate that Congress has given exclusive jurisdiction over the division of military disability benefits in a divorce action to a federal forum. See, e.g., 21 CJS, Courts, § 272, p 288 ("The preemption doctrine does not deprive state courts of subject matter jurisdiction over claims involving federal preemption unless Congress has given exclusive jurisdiction to a federal forum.").[10] However, as discussed later in this opinion, defendant has failed to persuade

_____

[9] To the extent defendant continues to assert that all types of federal preemption deprive state courts of subject-matter jurisdiction—the position he advanced during his prior trip to this Court—we disagree with this assertion. Instead, we adopt the analysis on this point in the concurring opinion in *Foster I* and clarify our caselaw in this area. See *Foster I*, 505 Mich at 181-188 (VIVIANO, J., concurring). In particular, although in *Henry v Laborers' Local 1191*, 495 Mich 260, 287 n 82; 848 NW2d 130 (2014), we asserted that "preemption is a question of subject-matter jurisdiction," it is clear that "our assertion was made in the context of *Garmon* preemption [see *San Diego Bldg Trades Council v Garmon*, 359 US 236; 79 S Ct 773; 3 L Ed 2d 775 (1959),] and was indisputably correct in that context given that Congress has established an exclusive federal forum, the National Labor Relations Board, to adjudicate certain claims under the National Labor Relations Act . . . ." *Foster I*, 505 Mich at 184. We also disavow our statement in *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997), that "[w]here the principles of federal preemption apply, state courts are deprived of subject matter jurisdiction." Finally, to the extent it reached a different conclusion, we overrule *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132; 796 NW2d 94 (2010).

[10] See also *Marshall v Consumers Power Co*, 65 Mich App 237, 245; 237 NW2d 266 (1976) (setting out a two-part test for determining whether Congress has impliedly preempted state law, under which a court must (1) "determine whether Congress has

us that the Veteran's Administration or any other federal forum has exclusive jurisdiction over the division of military disability benefits in a divorce action.

The United States Supreme Court rejected a similar argument in *Rose v Rose*, 481 US 619; 107 S Ct 2029; 95 L Ed 2d 599 (1987), after first observing:

> We have consistently recognized that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has positively required by direct enactment that state law be pre-empted. Before a state law governing domestic relations will be overridden, it must do major damage to clear and substantial federal interests. [*Id*. at 625 (cleaned up).]

Relying on 38 USC 3107(a)(2), the veteran spouse argued that the Veteran's Affairs administrator had exclusive authority over all issues involving the disposition of military disability benefits. Rejecting that argument, the Court explained:

---

preempted states from legislating or regulating the subject matter of the instant case," and (2) "if it has, [determine] whether it has also vested exclusive jurisdiction of that subject matter in the Federal court system"). The second part of the test is not satisfied in this case because Congress has not "vested exclusive jurisdiction of th[is] subject matter," i.e., division of military disability benefits in a divorce action, in a federal forum. See *Veterans for Common Sense v Shinseki*, 678 F3d 1013, 1025-1026 (CA 9, 2012) (en banc) ("[W]e conclude that [38 USC 511] precludes jurisdiction over a claim if it requires the district court *to review VA decisions that relate to benefits decisions*, including any decision made by the Secretary in the course of making benefits determinations . . . . If that test is met, then the district court must cede any claim to jurisdiction over the case, and parties must seek a forum in the Veterans Court and the Federal Circuit.") (quotation marks and citations omitted; emphasis added). And *Kalb v Feuerstein*, 308 US 433, 438-439; 60 S Ct 343; 84 L Ed 370 (1940), cited by defendant, only serves to confirm this point. At issue in *Kalb* was whether a state court had jurisdiction in a foreclosure matter over property that fell under the jurisdiction of the bankruptcy court. But Congress has established an exclusive federal forum for bankruptcy matters. *Id*. at 439.

14

This jurisdictional framework finds little support in the statute and implementing regulations. Neither [38 USC 3107(a)(2) nor 38 CFR 3.450 through 3.461 (1986)] mentions the limited role appellant assigns the state court's child support order or the restrictions appellant seeks to impose on that court's ability to enforce such an order. . . . Nor is it clear that Congress envisioned the Administrator making independent child support determinations in conflict with existing state-court orders. . . .

. . . Given the traditional authority of state courts over the issue of child support, their unparalleled familiarity with local economic factors affecting divorced parents and children, and their experience in applying state statutes . . . that do contain detailed support guidelines and established procedures for allocating resources following divorce, we conclude that Congress would surely have been more explicit had it intended the Administrator's apportionment power to displace a state court's power to enforce an order of child support. Thus, we do not agree that the implicit pre-emption appellant finds in § 3107(a)(2) is "positively required by direct enactment," or that the state court's award of child support from appellant's disability benefits does "major damage" to any "clear and substantial" federal interest created by this statute. [*Rose*, 481 US at 627-628, quoting *Hisquierdo v Hisquierdo*, 439 US 572, 581; 99 S Ct 802; 59 L Ed 2d 1 (1979).][11]

Although the Court in *Rose* found that the state child support statute was not preempted by federal law, its analysis is still helpful in determining whether Congress has established an exclusive forum for dividing military disability benefits in a divorce action.

---

[11] The Court further described the purpose of the federal statutes as follows:

The interest in uniform administration of veterans' benefits focuses, instead, on the technical interpretations of the statutes granting entitlements, particularly on the definitions and degrees of recognized disabilities and the application of the graduated benefit schedules. These are the issues Congress deemed especially well-suited for administrative determination insulated from judicial review. Thus, even assuming that [38 USC] 211(a) covers a contempt proceeding brought in state court against a disabled veteran to enforce an order of child support, *that court is not reviewing the Administrator's decision finding the veteran eligible for specific disability benefits*. [*Rose*, 481 US at 629 (cleaned up; emphasis added).]

Defendant here contends that the Secretary of Veterans Affairs has exclusive jurisdiction over all issues concerning veteran's benefits, including the division of those benefits in a state court divorce action. Defendant correctly notes that appellate jurisdiction from a decision by the Secretary is limited to the federal courts.[12] 38 USC 511(a) establishes that "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans" and generally precludes review of the Secretary's decision "as to any such question" "by any other official or by any court," with a limited number of exceptions. And 38 USC 5307 provides for a process of requesting apportionment of a veteran's benefits. But just as the Court in *Rose* was "not reviewing the Administrator's decision finding the veteran eligible for specific disability benefits," *Rose*, 481 US at 629, the trial court in this case was not reviewing a decision of the Secretary of Veterans Affairs under 38 USC 511(a). Therefore, contrary to defendant's assertion, there is no exclusive federal forum for dividing military disability benefits in divorce actions. We agree with plaintiff that 38 USC 511—just like 38 USC 211(a), which was at issue in *Rose*—does not refer to, restrict, or displace state court jurisdiction.

In sum, we hold that federal preemption under 10 USC 1408 and 38 USC 5301 does not deprive our state courts of subject-matter jurisdiction over a divorce action involving

---

[12] Specifically, 38 USC 7104(a) provides for an appeal from the Secretary's decision under 38 USC 511(a) to the Board of Veterans' Appeals. In turn, the United States Court of Appeals for Veterans Claims has exclusive jurisdiction to review decisions of the Board of Veterans' Appeals, 38 USC 7252(a), and the United States Court of Appeals for the Federal Circuit has jurisdiction to review a decision of the Court of Appeals for Veterans Claims, 38 USC 7292.

16

the division of marital property. Therefore, while the offset provision in the parties' consent judgment of divorce was "a mistake in the exercise of undoubted jurisdiction," *Jackson City Bank*, 271 Mich at 544, that judgment is not subject to collateral attack.[13]

## IV. CONCLUSION

Because the Court of Appeals erroneously concluded that the type of federal preemption at issue in this case deprives state courts of subject-matter jurisdiction, and because there is no other justification for a collateral attack on the consent judgment in this case, we reverse the judgment of the Court of Appeals and remand this case to the Dickinson Circuit Court for further proceedings not inconsistent with this opinion.

David F. Viviano
Bridget M. McCormack
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

---

[13] We believe the law in this area is correctly described in Turner, § 6:6, p 50:

> Initial division of military benefits must be made under federal substantive law, which requires that the benefits be awarded only to the service member and not to the former spouse. If the service member requests that the state court apply federal substantive law, and the state court instead applies state substantive law, *McCarty* requires that the state court decision be reversed. But if the service member never raises the issue—if he or she allows the state court to enter an erroneous order dividing military benefits under state substantive law, as happened in most of the pre-*McCarty* cases—*Sheldon* recognizes that *McCarty* does not support reversal of the state court judgment. Federal *substantive* law controls the issue, but under either federal or state procedural rules, a decision which is based upon the wrong substantive law cannot be collaterally attacked after it becomes final.

17